## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GARY W. F.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-618-CVE-CDL** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation.[1] For the reasons set forth below, the undersigned **recommends** that the district court **affirm** the Commissioner's decision.

### I.    Legal Standards

#### A.    Standard of Review

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756

---

[1]    On November 5, 2020, the action was reassigned from Magistrate Judge Frank H. McCarthy pursuant to General Order 20-37. (Doc. 20).

F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### B.    Five-Step Agency Process

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled.

At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. "This determination is governed by the Secretary's severity regulations, is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (internal citation omitted). A claimant who does not have a severe impairment is not disabled.

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R.

§ 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing SSR 86-8; SSR 82-62). If the claimant can perform his past relevant work, he is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## II.    Procedural History

Plaintiff applied for disability benefits on November 16, 2016. Plaintiff alleged disability due to cataracts, glaucoma in the right eye, and depression. (R. 235). Plaintiff's alleged disability onset date is January 1, 2017. (R. 10).[2] Before his alleged disability, Plaintiff worked as an iron worker and a roofer. (R. 18). Plaintiff also filed a Title XVI application for supplemental security income on December 29, 2016. *Id.*

Plaintiff's claim was denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). ALJ Christopher Hunt held a hearing on January 15, 2019, at which Plaintiff was represented by counsel. (R. 10). A vocational expert (VE) also testified at the hearing. *Id.* The ALJ denied benefits in a decision dated February 25, 2019. (R. 10-25). Plaintiff appealed the ALJ's decision to the Appeals Council,

---

[2]    Plaintiff's application alleged a disability onset date of March 5, 2016; however, Plaintiff later amended his alleged onset date to January 1, 2017. (R. 10).

which denied Plaintiff's request for review on September 10, 2019. (R. 1-6). The ALJ's decision thus became the final decision of the Commissioner. (R. 1). Plaintiff then timely appealed to the district court.

### III.   The ALJ's Decision

#### A.  Step One

At step one, the ALJ found that Plaintiff is insured through September 30, 2021 and that he has not engaged in substantial gainful activity since his amended alleged disability onset date of January 1, 2017. (R. 12).

#### B.  Step Two

At step two, the ALJ found that Plaintiff suffers from the severe impairments of right eye blindness and adjustment disorder with depressed mood. (R. 13). The ALJ also found that Plaintiff has a non-severe impairment of prostatic hypertrophy. *Id*.

#### C.  Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ stated that he gave special consideration to Listings relating to the special senses and speech (Listing 2.00) and mental disorders (Listing 12.00). (R. 13).

The ALJ also considered Plaintiff's mental impairments using the "paragraph B" criteria.[3] He found that Plaintiff has a moderate limitation in understanding, remembering,

---

[3]      The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage oneself. These criteria

or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 13-14). The ALJ determined that because Plaintiff's mental impairment does not cause at least two marked limitations or one extreme limitations, the paragraph B criteria are not satisfied.

Finally, the ALJ referenced the "paragraph C" criteria (for "serious and persistent mental disorders") and determined that they are not satisfied. *Id.*; *see* Listing 12.00A(2)(c).

**D.      Step Four**

  **i.      RFC**

The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] was able to perform detailed and some complex tasks. He needed to avoid hazardous machinery, unprotected heights, and driving. [Plaintiff] has limited depth and peripheral vision in both eyes and would have no depth perception.

(R.14). In explaining the RFC determination, the ALJ discussed Plaintiff's hearing testimony, medical records, and medical opinion evidence in the record, as summarized in part below.

  **ii.      Hearing Testimony**

Plaintiff testified that he attended high school until 11th grade and later obtained a GED. (R 15). Plaintiff can read, write, and manage his own money. *Id*. He does not have

---

represent the areas of mental functioning a person uses in a work setting. *See* 20 C.F.R., Part 404, subpt. P, App'x 1, § 12.00 (C).

health insurance and must pay a fee to visit a clinic. *Id*. Plaintiff had surgery on his right eye with the help of a financial assistance program. *Id*.[4] After his surgery, Plaintiff's pain improved, but his loss of vision did not. *Id*. He still has trouble balancing, standing, and walking; has headaches; and is sensitive to light and glare. *Id*. Plaintiff now also needs a specialist for his left eye. *Id*.

Plaintiff does not receive regular mental health care and does not want to take medication for his depression or a sleep aid. *Id*. He has trouble focusing but does not have feelings of worthlessness. *Id*. Plaintiff has a driver's license, but he stopped driving in May 2018 after his car broke down. *Id*.

### iii.   Medical Records

Plaintiff was treated for vision loss at Morton Comprehensive Health Service from October 2016 to December 2016. *Id*. On December 19, 2016, Plaintiff presented with complaints of glaucoma. *Id*. Plaintiff's left eye was normal, with distinct margins and a healthy rim. *Id*. His right eye was abnormal and thin, with deep cupping. *Id*. Macula and retinal vessels were normal in both eyes. *Id*. Pupils and extraocular movements were also normal. *Id*. Plaintiff was assessed with glaucoma associated with trauma and nuclear senile cataract. *Id*. His distance vision without prescription was 20/400 in the right eye and 20/20-1 in the left eye. *Id*. His distance binocular acuity without prescription was 20/20. *Id*.

Plaintiff received follow-up treatment at Dean McGee Eye Institute from January 2017 to March 2018. (R. 16). On January 11, 2017, his distance vision without prescription

---

[4]      Plaintiff had surgery in January 2017 to treat cataracts and glaucoma in his right eye. (R. 379).

was 20/800 in the right eye and 20/15 in the left eye. *Id*. His confrontational visual field (VFS) was restricted in the right eye and full to finger count in the left eye. *Id*. His assessment was moderate-stage glaucoma secondary to eye trauma in the right eye. *Id*.

The ALJ noted that the records showed "fairly consistent" distance vision results on subsequent examinations. *Id*. On January 25, 2017 results were measured at 20/250 on the right; 20/15 on the left. *Id*. On February 1, 2017, distance vision was measured at 20/150 on the right; 20/15-12 on the left. *Id*.

On February 22, 2017, Plaintiff had a follow-up appointment one month after surgery on his right eye. *Id*. Plaintiff was doing well and healing appropriately. *Id*. He complained of irritation in his right eye but was not having pain. *Id*. His vision improved; visual acuity was measured at 20/600 on the right and 20/20-1 on the left. *Id*.

Plaintiff continued to attend follow-up appointments for his vision between June 2017 and March 2018. *Id*. On February 14, 2018, Plaintiff complained of feeling pressure and decreased quality of vision. Examination showed field restriction in all quadrants in his right eye but normal confrontation VFS in the left eye. *Id*. On March 28, 2018, Plaintiff complained of sinus pressure on the right side but did not have pain or irritation and reported stable vision that day. *Id*. His visual acuity at distance was 20/60-2 on the right, and 20/20-1 on the left. *Id*. The assessment was glaucoma secondary to eye trauma on the right eye. *Id*.

Timothy Doty, Psy.D., examined Plaintiff on a consultative basis on May 1, 2017. *Id*. Plaintiff reported that he was unable to work because of vision problems. *Id*. Plaintiff scored 29/30, within the normal range, on a cognitive assessment. *Id*. He was oriented times

four and exhibited an adequate fund of knowledge, with relevant association and moderate results on memory, insight, and reality testing. *Id*. His affective range was not varied, and his mood was dysthymic. *Id*. Dr. Doty's diagnostic impression was adjustment disorder with depressed mood. Plaintiff's global assessment of functioning (GAF) score was 71-80. *Id*.

Dr. Doty opined that Plaintiff's physical and medical concerns appear to affect his ability to engage in work-related mental activities. *Id*. Dr. Doty also opined that Plaintiff's physical and visual limitations appear to affect his ability to persist in real-world tasks. *Id*. Plaintiff's memory performance was assessed as moderate. *Id*. Dr. Doty assessed as intact Plaintiff's ability to understand work-related mental tasks, his ability to sustain concentration in a real-world situation, and his ability to socially interact and adapt to the demands of a work situation. *Id*. The ALJ assigned great weight to Dr. Doty's opinion and Plaintiff's GAF score, finding them consistent with Plaintiff's testing and Dr. Doty's evaluation, which the ALJ described as thorough. (R. 16-17). Finally, the ALJ noted that there are no other mental health records in Plaintiff's record to compare or contrast for consistency. (R. 17).

Kent Abernathy, D.O., conducted a consultative examination on January 20, 2018. *Id*. Plaintiff complained of vision loss and dizziness. *Id*. Dr. Abernathy measured Plaintiff's visual acuity as none in the right eye, 20/20 in the left eye, and 20/20 with both eyes. *Id*. Dr. Abernathy noted that Plaintiff was rambling and mumbling but that his speech was consistent with his age and history. *Id*. Plaintiff was unsteady and stumbled when asked to stand in front of the eye chart; however, otherwise Plaintiff moved about the room with a normal gait and with normal speed, safety, and stability. *Id*. Plaintiff did not exhibit a limp

and could walk without assistive devices. *Id*. Dr. Abernathy assessed almost complete blindness in Plaintiff's right eye. *Id*.

On physical examination, Plaintiff's neck was non-tender and had a full range of motion, his lungs were clear, and he had a regular heart rate and rhythm and a soft, non-tender abdomen. *Id*. Plaintiff had a normal range of motion in his extremities and no pain associated with passive range of motion. *Id*. His cranial nerves II through XII were grossly intact and showed no sensory or focal defects. His grip strength was 5/5 bilaterally. *Id*. Plaintiff was alert and oriented times three (i.e., oriented to person, place, and time), with normal mentation and thought process, and exhibited mood, judgment, and affect within normal limits. *Id*.

Plaintiff received eye care from Gary Roberson, O.D., between February 2018 and January 2019. *Id*. On January 5, 2019, Plaintiff's intraocular pressure was 25 in the right eye and 23 in the left eye. *Id*. His visual acuity was 20/LP (light perception) OD (in the right eye) and 20/50 OS (in the left eye). Plaintiff's refraction-final prescription showed LP (light perception) both distance and near in the right eye; 20/30 distance and 20/20 near in the left eye. His vision OU (with both eyes) measured 20/30 distance and 20/20 near. *Id*. Dr. Roberson noted a "cataract +1CFC" in Plaintiff's left eye and measurements of 1+ in clarity, anterior cap, posterior cap, and cortex of the left eye. *Id*. Plaintiff's posterior examination was normal in both eyes. Dr. Roberson diagnosed Plaintiff with presbyopia. *Id*.

On May 28, 2018, Plaintiff received emergency room treatment for urine retention and prostate hypertrophy and referred for a follow-up two days later. *Id*. However, the record includes no examination notes from this visit. *Id*.

### iv.    Evaluation of Symptoms

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence . . . in the record." *Id*. The ALJ specifically cited the results of Plaintiff's eye examinations in January and February 2017. *Id*. The ALJ then discussed in detail the results of Plaintiff's January 5, 2019 eye examination. (R. 18). The ALJ noted that Plaintiff's left eye pressure was found to be above normal range. *Id*. The ALJ noted that high eye pressure alone does not cause glaucoma but that individuals diagnosed with high eye pressure should have regular comprehensive eye examinations. *Id*.

The ALJ further explained that no exertional limitations are necessary, referencing Dr. Abernathy's observations during his consultative examination that Plaintiff had normal range of motion, normal gait, and normal strength in his extremities. *Id*. The ALJ explained that although Dr. Abernathy observed that Plaintiff stumbled when he went to the eye chart, Plaintiff also "moved about the room with a normal gait with normal speed, safety, and stability and he did not require the use of assistive devices to ambulate." *Id*. (citing Exhibit 5F).

The ALJ assigned great weight to the opinion of state agency reviewing physicians that Plaintiff requires only visual limitations. *Id*. He noted that this finding is consistent with Plaintiff's "physical consultative examination, which was essentially negative with a full range of motion, normal gait, and full strength in [his] upper and lower extremities," as well as with Plaintiff's most recent eye examination. *Id*. The ALJ assigned some weight to Dr.

11

Doty's mental assessment, noting that it found Plaintiff has a moderate limitation with his memory, indicating a severe mental impairment. *Id*.

### v.  Past Relevant Work

The ALJ found that Plaintiff has past relevant work as a roofer, performed at the heavy exertional level, with a specific vocational preparation (SVP) of 7; and an ironworker, performed at the heavy exertional level, with an SVP of 7. *Id*. The ALJ found based on the VE's testimony that Plaintiff is unable to perform any past relevant work. *Id*.

### E.  Step Five

At step five, the ALJ determined that, despite Plaintiff's severe impairments, he retains the ability to perform substantial gainful activity consistent with the RFC. (R. 19). Based on Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff can perform the requirements of occupations including Janitor (DOT 381.687-018), Laundry Worker I (DOT 361.684-014), and Dishwasher (DOT 318.687-010), and that such work exists in significant numbers in the national economy. (R. 18-19). Accordingly, the ALJ found Plaintiff not disabled at step five.

## IV.  Discussion

Plaintiff challenges the ALJ's RFC determination on two broad grounds. First, Plaintiff argues that the ALJ failed to follow the required legal standards in evaluating the medical evidence in the record. Second, Plaintiff contends the ALJ failed to properly assess Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms. Plaintiff's specific arguments are addressed below.

A.     **Medical Evidence**

Plaintiff contends that the ALJ erred in finding Plaintiff's only limitations are visual. Plaintiff argues that a reasonable ALJ could have found Plaintiff has other limitations relating to Plaintiff's symptoms of dizziness and disorientation, difficulty with communication such as mumbling and slurring his speech, headaches, and eye pain. Plaintiff also contends that his mental limitations are greater than those found by the ALJ.

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *see Williams*, 844 F.2d at 751. The RFC assessment is made "based on all of the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 404.1545(a)(3). When a claimant has multiple impairments, the Commissioner "consider[s] all of [a claimant's] medically determinable impairments of which [the Commissioner is] aware." 20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, an ALJ must evaluate every medical source opinion in the record. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927). The ALJ must give "specific, legitimate" reasons for rejecting any medical opinion. *Id*. (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Unless a treating source's medical opinion is entitled to controlling weight, the ALJ should "consider all of the following factors in deciding the weight [to] give to any medical opinion":

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or

13

not the physician is a specialist in the area upon which an opinion is rendered, and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citing *Drapeau*, 255 F.3d at 1213); *see also* 20 C.F.R. § 416.927; 20 C.F.R. § 404.1527. The ALJ must provide good reasons for the weight he ultimately assigns the opinion. *Watkins*, 350 F.3d at 1300-01 (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be specific enough to make clear to any subsequent reviewers the weight the ALJ assigned to the opinion and the reasons for that weight. *See id.* at 1300; *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); *Anderson v. Astrue*, 319 F. App'x. 712, 717 (10th Cir. 2009) (unpublished).

### i.    Dr. Abernathy

Plaintiff argues that the ALJ improperly ignored certain aspects of Dr. Abernathy's report. Specifically, Plaintiff contends the ALJ should have discussed that (1) in reviewing Plaintiff's systems, Dr. Abernathy noted that "[p]ertinent positives include: vision loss, dizziness, headaches, imbalance. All other systems reviewed and found to be negative." (R. 404); and (2) Dr. Abernathy noted that Plaintiff seemed confused in recounting his medical history and was difficult to understand, exhibiting slurred and mumbling speech. (R. 404-405).

An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). However, Plaintiff has not shown that the ALJ did so here. In fact, the ALJ noted many of the specific findings Plaintiff highlights, including Plaintiff's complaint of dizziness and Dr. Abernathy's

14

observation that Plaintiff was "mumbling." (R. 17).

Dr. Abernathy's report also mentioned headaches and slurred speech, which the ALJ did not address in his decision. However, the focus of a disability determination is on the functional consequences of a condition. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (explaining that RFC "is the most you can still do despite your limitations"). Here, Dr. Abernathy's observations about Plaintiff's headaches and slurred speech do not constitute an opinion about Plaintiff's functional limitations.[5] Nor has Plaintiff shown that these comments are significantly probative evidence that the ALJ ignored.

Plaintiff also points to Dr. Abernathy's observation that Plaintiff's visual field was "absent in right eye," and that his right eye is "almost completely blind." (R. 405). However, the ALJ explicitly addressed these findings. (*See* R. 17 (citing Exhibit 5F) (noting that Dr. Abernathy's "assessment was visual impairment of the right eye that was almost completely blind.")). Additionally, the ALJ included limitations in the RFC—including avoidance of hazardous machinery, driving, unprotected heights, and activities requiring depth perception—to accommodate Plaintiff's vision impairment. As the ALJ explained his assessment of Dr. Abernathy's report:

---

[5]    Dr. Abernathy's "Functional Evaluation Assessment" addressed only Plaintiff's manipulative abilities and observed no limitations as to any function. (R. 408).

> [Plaintiff's] orthopedic consultative examination was essentially negative
> with a full range of motion, normal gait, and full strength in [his] upper and
> lower extremities. [Plaintiff's] record noted he stumbled when he went to the
> eye chart but then reported [Plaintiff] moved about the room with a normal
> gait with normal speed, safety, and stability and he did not require the use of
> assistive devices to ambulate. Based upon his consultative examination, no
> exertional limitations would be necessary.

(R. 18 (internal citations omitted)). This explanation provides good reasons, is specific,

and is supported by substantial evidence. Moreover, Dr. Abernathy's comments do not

indicate that any additional functional limitations are required.

"The burden to prove disability in a social security case is on the claimant, and to

meet this burden, the claimant must furnish medical and other evidence of the existence of

the disability." *Branum,* 385 F.3d at 1271. Where substantial evidence supports the ALJ's

decision, as it does here, the fact that Plaintiff would weigh the evidence differently does

not constitute reversible error. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir.

2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d

at 1084 (court may not reweigh evidence and displace agency choice between two fairly

conflicting views). Plaintiff has not shown that the ALJ's discussion of Dr. Abernathy's

consultative report was erroneous. Rather, Plaintiff's argument amounts to an invitation to

reweigh the evidence, which the court may not do. *See Noreja*, 952 F.3d at 1177; *see also*

*Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice

had the matter been before it de novo.") (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200

(10th Cir. 2004)).

16

Alternatively, Plaintiff contends the ALJ should have given *less* weight to Dr. Abernathy's opinion, arguing that certain public records identify Dr. Abernathy as an obstetrics and gynecology specialist, not an eye specialist or an internist. The Commission "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). However, this is only one of several factors that the ALJ must consider in determining the weight to give to a non-treating source's opinion. Ultimately, the task of assigning weight to a consulting examiner's opinion belongs to the ALJ, and this determination is not subject to reversal, as long as the ALJ has applied the correct legal standards and his conclusions are supported by substantial evidence. *See Lax*, 489 F.3d at 1084. As set forth above, the ALJ's discussion of Dr. Abernathy's opinion meets these requirements.

Plaintiff also faults the ALJ for failing to identify the weight he assigned to Dr. Abernathy's opinion. While the ALJ did not explicitly identify the weight he gave to Dr. Abernathy's opinion, he discussed Dr. Abernathy's report in detail, noting his objective findings and observations on examination. The ALJ's discussion provides a sufficient explanation to enable the court to review whether the ALJ applied the correct legal standards. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense."). As noted above, the ALJ reasonably explained how he

17

evaluated Dr. Abernathy's objective findings and observations about Plaintiff's ability to walk and balance. (R. 17-18). It is clear from the ALJ's discussion that he accorded some weight to these findings and evaluated them in the context of the record as a whole. Accordingly, the failure to state the category of weight he assigned to this opinion is not reversible error. *See Keyes-Zachary*, 695 F.3d at 1161-65.

### ii.    January 2019 Eye Examination

Plaintiff argues that the ALJ improperly ignored or minimized probative findings from Plaintiff's January 2019 eye exam records, including handwritten notes indicating, "CRITICAL PRESSURE IN EYES R&L" and "IMMEDIATE ATTENTION & CARE NEEDED IN LEFT EYE!" (R. 468-469). However, the ALJ addressed this note and gave reasons for the weight he accorded it:

> Looking at the claimant's most recent eye examination on January 5, 2019, his intraocular pressure on the right was 25 and on the left, it was 23. However, normal pressures range from 12-22 and eye pressure greater than 22 was considered higher than normal. High eye pressure alone does not cause glaucoma but it is a risk factor and individuals diagnosed with high eye pressure should have regular comprehensive eye examinations. Looking at the document, there was handwritten note that stated immediate attention and care needed in the left eye (Exhibit 8F/6). However, there is no indication who wrote that and under the diagnosis and plan, it showed presbyopia OU but no other referrals or recommendations (Exhibit 8F/7). In addition, his diagnosis of presbyopia is indicating he had trouble seeing up close. Finally, the claimant's refraction-final prescription showed OD distance and near was LP; OS distance was 20/30 and near 20/20; and OU distance 20/30 and near 20/20 (Exhibit 8F/5). Considering the evidence, the above limitations of avoiding hazardous machinery, unprotected heights, and driving; and limited depth and peripheral vision in both eyes and would have no depth perception would address his eye impairment.

(R. 18). The ALJ's discussion of this report is thorough, and his explanation for the weight he accorded to it is reasonable. The court may not reweigh the evidence. *See Lax*, 489 F.3d

18

at 1084. Moreover, the January 2019 eye examination report does not contain an opinion regarding any functional limitations. Accordingly, there is no reversible error in the ALJ's evaluation of this evidence.

### iii.    Dr. Doty

Plaintiff argues that the ALJ misstated and minimized Dr. Doty's findings. (R. 16). Under the substantial evidence standard of review, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays*, 739 F.3d at 576 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

Here, the ALJ addressed Dr. Doty's findings and reasonably explained the weight he accorded Dr. Doty's assessment of Plaintiff's mental impairment. Dr. Doty opined that Plaintiff's ability to engage in work-related mental activities was affected by "physical/medical concerns" or "physical/visual limitations," but—as the ALJ appropriately noted—explained that he would defer to medical opinions as to Plaintiff's physical medical conditions. (R. 16). *Cf., e.g.*, *Waymire v. Apfel*, 198 F.3d 260, *1 (10th Cir. 1999) (holding that ALJ's step-four findings were sufficient where ALJ rejected psychologist's opinion that "was predicated on the psychologist's view the plaintiff's *physical* symptoms were severe," in contrast to the findings of medical doctors).

Plaintiff contends the ALJ improperly minimized Dr. Doty's findings by concluding that Plaintiff's mental status score "is consistent with [his] testing and his thorough

19

evaluation" and demonstrated that "there was not any need for concern." (R. 16). However, the ALJ's discussion reflects Dr. Doty's own statement that Plaintiff's score "is considered to be within the normal/unconcerning range (>27)." (R. 394). Moreover, Dr. Doty concluded that "[m]ental health does not seem to be the most salient feature of [Plaintiff's] concerns." (R. 395). Thus, the ALJ's summary is well-supported by Dr. Doty's findings.

Plaintiff argues that the ALJ improperly failed to acknowledge Dr. Doty's assessment of Plaintiff's concentration as "moderate." (R. 394). However, the ALJ's decision did not ignore this finding. Dr. Doty's examination report notes that he observed Plaintiff's "[m]emory and concentration were moderate" based on a "mini mental status exam." The ALJ's decision acknowledges this finding by noting at least three times that Dr. Doty found Plaintiff's memory or "memory performance" was moderate. (R. 394-395). This was sufficient to address Dr. Doty's finding regarding Plaintiff's memory and concentration. The ALJ is not required to perform "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000).

Moreover, the significance of this finding is not entirely clear in the context of Dr. Doty's overall assessment. In his summary of findings on examining Plaintiff, Dr. Doty opined that Plaintiff's "ability to *sustain concentration* in a real-world situation appears intact." *Id.* Dr. Doty also rated as "intact" Plaintiff's ability to understand work-related tasks and to socially interact and adapt to the demands of a work situation. *Id*. The ALJ determined that Plaintiff has only a mild limitation in concentrating, persisting, or maintaining pace, noting that Plaintiff's testimony about his daily activities indicated that he could ignore or avoid distractions, complete tasks in a timely manner, and "initiate and

perform a task that he understood and knew how to do." (R. 14). The ALJ's decision reasonably explained how he weighed the relevant evidence in determining that Plaintiff is only mildly limited in this area. Moreover, the RFC limitation to "some complex tasks" adequately accommodates this finding. (R. 14; *cf., e.g., Seritt v. Astrue*, No. 11-CV-496, 2012 WL 5363497, at *4 (N.D. Okla. Oct. 30, 2012) (affirming Commissioner's decision where RFC included limitation to "simple and some complex tasks" and ALJ found claimant had mild restrictions in concentration, persistence, and pace and moderate restrictions in her daily living activities and social functioning).

### iv. Pain

Plaintiff argues the ALJ improperly failed to account for Plaintiff's pain in the RFC determination. Plaintiff points to records that Plaintiff complained of pain from nonsevere prostatic hypertrophy and that he has a history of back pain, as well as Plaintiff's complaints of headaches and eye pain. Plaintiff suggests that his pain limits his ability to perform the "detailed and some complex tasks" included in the RFC determination. He also contends that the ALJ failed to properly evaluate whether Plaintiff's pain would require him to miss too much work, citing the VE's testimony that all competitive employment would be eliminated for a claimant who has to miss work two to three days a month. However, Plaintiff fails to identify any medical evidence in the record indicating that his pain would require limitations beyond those in the RFC determination. Accordingly, Plaintiff has not shown that the ALJ erred in his consideration of Plaintiff's pain.

v.     **Other Alleged Errors**

Plaintiff raises a variety of other alleged errors in the ALJ's RFC determination. First, Plaintiff argues that the ALJ improperly ignored Plaintiff's stated explanation for leaving his last job in 2018. At the hearing, Plaintiff said he suspected his last job ended because he could not keep up with the pace of loading and unloading due to his limited vision. (R. 37-38). Plaintiff argues that the same limitation prevents him from performing the jobs the ALJ found he can perform at step five. However, Plaintiff has not identified any significantly probative evidence indicating that further limitations were required to accommodate his visual impairment. *See Coleman*, 58 F.3d at 579.

Next, Plaintiff argues that the ALJ's RFC determination failed to account for the mental limitations he found in his paragraph B analysis—specifically, his findings that Plaintiff has a moderate limitation in understanding, remembering, or applying information; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting and managing oneself. (R. 13). Under Tenth Circuit precedent, once a mental impairment has been found at step two, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in" the paragraph B categories. *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (citing SSR 96-8p, 1996 WL 374184, at *4). These activities include the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *Id.* at *6.

22

Here, the ALJ addressed these activities at step two. The ALJ explained that despite Dr. Doty's finding that Plaintiff has a moderate memory limitation, Plaintiff "followed spoken instruction 'very well' indicating he could understand and learn terms, instructions, and procedures." (R. 13 (citing Exhibit 4E). The ALJ further noted that Plaintiff "detailed his past work at the hearing indicating he could describe work activities to someone else (pursuant to his testimony) . . . [and] participated in dialogue with his representative and the [ALJ] at the hearing indicating he could ask and answer questions and provide explanations (pursuant to his testimony)." (R. 14).[6] With respect to Plaintiff's mild limitations on the remaining paragraph B criteria—i.e., interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself—the ALJ cited additional evidence, including Plaintiff's own testimony and statements, countervailing the need for additional limitations to mental functions. *See, e.g., id.* (noting Plaintiff's statements that he "could go out alone indicating he could be aware of normal hazards and take appropriate action" and that "he had the ability to adapt to whatever life threw at him indicating he had the ability to respond to demands").

The ALJ's decision also acknowledged the opinion of the state agency's reviewing psychological consultant rating Plaintiff's mental impairment as nonsevere. However, the ALJ gave only "some weight" to the reviewing psychological consultant's opinion,

---

6      The ALJ also noted Plaintiff's self-reported activities, including caring for his elderly father and doing household chores and home repairs, and his testimony that he has looked for work and that if a job became available, he would take it. (R. 14-15; *see* R. 47). The ALJ reasonably found that these statements weighed against a finding that Plaintiff is so limited that he cannot work at all.

23

explaining that he found Plaintiff's mental impairment is severe due to Dr. Doty's finding that Plaintiff has a moderate limitation with his memory. (R. 18). The ALJ addressed Plaintiff's mental limitations in the RFC by limiting Plaintiff to "some complex" tasks. This discussion fulfilled the ALJ's duty to "itemize[e] various functions" relevant to Plaintiff's mental RFC. *Wells*, 727 F.3d at 1069.

Plaintiff cites a recent unpublished case in arguing that he is more limited than the mental RFC determination. In *Parker*, the Tenth Circuit noted evidence in the record specifically tied to the claimant's mental RFC: namely, a consulting examiner's opinion that (1) the claimant could not work closely with supervisors and coworkers and that (2) the claimant could only accept supervision or relate to coworkers if the contact were infrequent. *Parker v. Comm'r*, 772 F. App'x 613, 615-16 (10th Cir. 2019). The ALJ failed to incorporate those limitations in the RFC, which the Court held was reversible error. The Court explained that the agency must explain how a work-related limitation accounts for mental limitations reflected in a medical opinion unless the connection is obvious. *Id.* at 616 (citing *Vigil v. Colvin,* 805 F.3d 1199, 1203-04 (10th Cir. 2015) and *Wayland v. Chater*, No. 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpublished)).

Here, however, Plaintiff points to no evidence in the record indicating that his mental impairment requires additional functional limitations; nor does he indicate any additional limitations the ALJ excluded. As discussed above, the ALJ cited to relevant evidence as to mental functions in explaining his paragraph B analysis. The undersigned finds no obvious limitation arising from the record evidence of Plaintiff's mental impairment. Accordingly, substantial evidence supports the ALJ's mental RFC limitations.

Plaintiff also contends the ALJ's decision improperly minimized evidence of Plaintiff's cataracts and glaucoma. However, Plaintiff fails to explain how those conditions limit him beyond the RFC determination, which includes limitations for Plaintiff's severe visual impairment. Moreover, Defendant correctly notes that no medical source assessed greater limitations than those found in the RFC determination here. Accordingly, Plaintiff has failed to demonstrate error with respect to those conditions.

### B.   Intensity, Persistence, and Limiting Effects of Symptoms

Plaintiff argues that the ALJ selectively chose from Plaintiff's activities of daily living in evaluating the intensity, persistence, and limiting effects of his symptoms. "Credibility determinations are peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000). The ALJ must explain "the link between the evidence and credibility determination." *Id*. Further, he must give "specific reasons . . . supported by the evidence in the case record" for his credibility determination. 20 C.F.R. § 404.1529; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."); *see also* SSR 16-3p, 2016 WL 1237954.

In discussing Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ noted that Plaintiff "drove a car indicating he could ignore or avoid distractions while completing a task." (R. 14). Plaintiff objects to this inference, pointing to his testimony that he has not driven a car since his car broke down in May of 2018, and that he "[didn't] know how [he would] handle driving with this eyesight." (R. 46). In addition, Dr. Abernathy's notes reflect that Plaintiff said he had been in two "small wrecks" before he was diagnosed

25

with his eye problem. (R. 404). Plaintiff also reported in his function report that he "had 3 fender benders; my fault, last year! Night driving is out!" (R. 261).

However, the ALJ reasonably accounted for these limitations in the RFC determination, which explicitly excludes driving. Moreover, Plaintiff testified that he had stopped driving because his car had broken down and he was unsure of how well he could drive due to his vision—not because of an inability to ignore or avoid distractions. Accordingly, there is no conflict between that testimony and the ALJ's finding regarding Plaintiff's attention.

Finally, Plaintiff points to various statements he made in his function report and hearing testimony regarding the way he prepares meals, does household chores and yard work, and cares for himself. Plaintiff argues that the ALJ erred in failing to address these statements, which Plaintiff contends indicate that he is more limited than the RFC determination. However, none of the statements constitute significantly probative evidence of a limitation that the ALJ failed to address. Thus, these statements do not constitute grounds to overrule the ALJ's evaluation of Plaintiff's subjective complaints. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (ALJ's evaluation of symptom allegations "warrant particular deference").

## V.    Conclusion and Recommendation

The undersigned finds the ALJ's decision is supported by substantial evidence and therefore **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **affirmed**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before February 12, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 29th day of January, 2021.

Christine D. Little
United States Magistrate Judge

27