UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

GARY W. F.,                                )
                                           )
          **Plaintiff,**         )
                                           )
v.                                         )   Case No. 19-CV-0618-CVE-CDL
                                           )
ANDREW M. SAUL,                            )
**Commissioner of Social Security**        )
**Administration,**                        )
                                           )
          **Defendant.**         )

## OPINION AND ORDER

Now before the Court is the report and recommendation of a magistrate judge (Dkt. # 22) recommending that the Court affirm the decision of the Commissioner of the Social Security Administration (Commissioner) denying social security benefits to plaintiff. Plaintiff has filed a timely objection (Dkt. # 23) to the report and recommendation. Defendant has filed a response (Dkt. # 24) referring the Court to the arguments in his initial response brief (Dkt. # 18).

### I. BACKGROUND

On October 18, 2016, plaintiff visited Christopher Copp, M.D., complaining of blurry vision and eye pain after using reading glasses. Dkt. # 9, at 345. Upon examination, Dr. Copp found plaintiff had secondary open-angle glaucoma, a cataract, astigmatism, myopia and presbyopia. Id. He prescribed xalatan and timoptic as treatment. Id. He also referred the patient to the Dean McGee Eye Institute for a glaucoma stint. Id. at 346.

Plaintiff submitted an application for disability insurance benefits on November 14, 2016, alleging he had been disabled since March 5, 2016. Id. at 14. Plaintiff also protectively filed for supplemental security income. Id. Plaintiff later amended his application to indicate a disability

onset date of January 1, 2017. Id. at 237. Plaintiff's application stated that his ability to work was limited by glaucoma in his right eye, cataracts, and depression. Id. at 243. Prior to disability onset, plaintiff had worked as an ironworker and a roofer. Id. at 22, 40-41.

On January 11, 2017, plaintiff went to the Dean McGee Eye Institute per Dr. Copp's referral and was seen by Mahmoud Khaimi, M.D. Id. at 360.[1] Plaintiff returned to Dr. Khaimi on January 24, 2017, for cataract and glaucoma surgery of the right eye. Id. He had follow up appointments the day after surgery, one week after surgery, and one month after surgery. Id. One week post-surgery, plaintiff told Dr. Khaimi that he was not in pain. Id. at 388. However, the plaintiff also stated he had issues with equilibrium. Id. One month post-surgery, plaintiff again told Dr. Khaimi that he was not in pain, but noted he still had issues with equilibrium. Id. at 384. He also stated he had irritation in his right eye, but that the prescription eye drops were helping manage the irritation. Id.

On May 1, 2017, plaintiff had a consultative exam with Timothy Doty, Psy. D. In this evaluation, plaintiff stated his chief concern was his vision. Dr. Doty assessed plaintiff and administered a mini mental status exam to plaintiff. Id. at 398. The results of the exam indicated that plaintiff's mental status was "normal/unconcerning." Id. Dr. Doty concluded that plaintiff had "adjustment order with depressed mood." Id.

On June 15, 2017, plaintiff's claim was denied at the initial level. Id. at 73. Plaintiff appealed. On January 20, 2018, plaintiff had another consultative exam, this time with Kent Abernathy, D.O., who specialized in obstetrics and gynecology. In that exam, plaintiff's chief complaint was vision loss. Id. at 408. Dr. Abernathy found the pertinent symptoms to be "vision

---

[1] The ALJ and the magistrate judge both recited plaintiff's numerical vision test results of this and other doctors. These were not objected to and will not be repeated herein.

loss, dizziness, headaches, and imbalance." Id. He stated plaintiff was "almost completely blind" in his right eye. Id. at 409.

On February 14, 2018, plaintiff visited Dr. Khaimi for another follow up appointment for his glaucoma. Plaintiff complained that he had more pain in his eye than he had the year before and stated he had issues with equilibrium. Id. at 430. Dr. Khaimi conducted an exam that found plaintiff had visual field restrictions in his right eye, but no restrictions in his left. Id. at 431. Dr. Khaimi noted that plaintiff's intra-ocular pressure was too high and prescribed medication. Id. at 433.

On February 15, 2018, plaintiff's claim for disability was denied upon reconsideration. Id. at 133. In its rejection, the agency noted that it considered new evidence from the Dean McGee Eye Institute and Dr. Abernathy's examination. Id. Following the denial upon reconsideration, plaintiff requested a hearing before an administrative law judge (ALJ).

Plaintiff followed up with Dr. Khaimi again on March 28, 2018. Id. at 426. At that appointment, plaintiff denied pain or irritation in his eyes, but stated he had issues with equilibrium. Dr. Khaimi assessed that plaintiff's intra-ocular pressure was still too high and prescribed a new medication for his right eye. Id. at 429.

On January 5, 2019, plaintiff visited Gerald Roberson, O.D., to address his eye problems. Id. at 471. In his notes, Dr. Roberson states that plaintiff had critical pressure in both eyes (id. at 472), and states "immediate attention and care needed in left eye!" Id. at 473. The notes appear to indicate the presence of a cataract in the left eye. Id.

Plaintiff's hearing was held before an ALJ on January 15, 2019. Id. at 14. Plaintiff was represented by counsel at the hearing. Id. After the hearing, the ALJ issued a decision assessing the medical records plaintiff provided, as well as plaintiff's testimony and the testimony of a vocational

expert (VE). The ALJ reviewed that information in conjunction with the five step process outlined to evaluate whether plaintiff is disabled. See 20 C.F.R. §§ 404.1520(a) and 416.920(a) (describing the five-step process).

In his decision, the ALJ first found that plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset of disability. Dkt. # 9, at 16. Next, at step two of his analysis, the ALJ found plaintiff had two severe impairments–right eye blindness and adjustment disorder with depressed mood–that significantly limited his ability to perform basic work activities. Id. at 17. The ALJ also found plaintiff had prostatic hypertrophy, but that it was a non-severe impairment. Id. After noting those impairments, the ALJ found that neither the impairments nor the combination of impairments met or exceeded the requirements to establish an impairment in the Listings of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. In so finding, the ALJ placed specific emphasis upon "Special Senses and Speech" and "Mental Disorders." Id.

The ALJ went on to state that the severity of the plaintiff's mental impairment did nor satisfy the "paragraph B" criteria. Reviewing agency reports, plaintiff's consultative examination, plaintiff's testimony and plaintiff's application, the ALJ found plaintiff had shown a moderate limitation in only one area: "understanding, remembering, or applying information." Id. The ALJ found that plaintiff had only mild limitations in each of the other "paragraph B" criteria (interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself). Id. at 17-18. The ALJ found that because plaintiff's mental impairment did not cause at least two "marked" limitations or one "extreme limitation" the "paragraph B" criteria were not satisfied. The ALJ then found that the plaintiff did not satisfy the "paragraph C" criteria. Id. at 18.

After finding that plaintiff did not meet a listed impairment at step three, the ALJ proceeded to step four of the analysis and found that plaintiff had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels," but that plaintiff "needed to avoid hazardous machinery, unprotected heights, and driving" because plaintiff "has limited depth and peripheral vision in both eyes and would have no depth perception." Id. at 18. In support of his determination, the ALJ summarized the evidence in the record. Id. at 18-22.

In that summary, the ALJ stated that he considered "all symptoms to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929 and SSR 16-3p." Id. at 18. He also considered opinion evidence per 20 C.F.R. §§ 404.1527 and 416.927. Id. at 19. The ALJ noted that, per the two step process of considering the plaintiff's symptoms, he must first determine whether there was an underlying medically determinable physical or mental impairment that could reasonably produced the plaintiff's symptoms, and then evaluate the intensity, persistence, or functionally limiting effects of symptoms to determine the extent they limit plaintiff's functional capacity to work. Id. at 19. When considering plaintiff's RFC at this stage, the ALJ noted that where the limitations or symptoms are not supported by medical evidence, the ALJ may rely on other evidence in the record to determine the plaintiff's limitations. Id.

The ALJ then detailed plaintiff's medical history, focusing predominantly on plaintiff's glaucoma. Id. at 19-22. He noted that plaintiff indicated his eye pain had been reduced by his right eye surgery, and that medical reports reflect plaintiff stated he was pain free in his right eye on February 22, 2017 and March 28, 2018. Id. at 19-20. He noted that Dr. Abernathy found plaintiff

was "almost completely blind." Id. at 21. He also briefly noted that plaintiff reported headaches and balance problems. Id. at 19.

The ALJ then noted that plaintiff's consultative exam with Dr. Doty indicated plaintiff had adjustment disorder with depressed mood. Id. at 20. He also stated that plaintiff did not submit any other mental health treatment to compare or contrast with other records to assess consistency. Id. at 21. He noted that during the administrative proceedings, agency psychologists reviewed plaintiff's records and found he had only mild limitations in cognitive abilities, and no severe mental impairment (id. at 63-84, 89-111). He accorded the agency doctor's findings regarding plaintiff's mental health "some weight" as the ALJ found that plaintiff's "mental health examination found the [plaintiff] had a moderate limitation with [his] memory. . ." Id. at 22. He included a mental limitation in the RFC to accommodate a moderate limitation with his memory. Ultimately, the ALJ determined that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . " Id. at 21.

At steps four and five of the analysis, the ALJ determined that plaintiff could not perform his past relevant work but that there were jobs available in the regional and national economies that plaintiff could perform with his RFC. Id. at 22-23. Based on this finding, the ALJ determined that plaintiff was not disabled. The Appeals Council found no basis to change the ALJ's decision and denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Id. at 5. Plaintiff filed this case requesting judicial review of the denial of his claim

for benefits, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends that the Commissioner's decision be affirmed. Dkt. # 22.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. The parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). If a party objects, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

In reviewing an objection to a social security benefits determination, this Court is limited to determining whether the ALJ has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). The ALJ's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005). Reversal is also appropriate where the ALJ fails to support his decision with substantial evidence. A decision is not supported by substantial evidence if the decision does not rest on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019). Even if a court might

have reached a different conclusion, the ALJ's decision stands if it is supported by substantial evidence. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" Biestek,139 S. Ct. at 1153 (quoting 42 U.S.C. § 405(g)). A court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision." Travas M.P. v. Saul, No. 18-CV-0663-CVE-JFJ, 2020 WL 5203592, at *3 (N.D. Okla. Sept. 1, 2020) (citing Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).[2]

### III. ANALYSIS

Plaintiff objects to the ALJ's decision and magistrate judge's report and recommendation to affirm the ALJ's decision for seven reasons. First, plaintiff argues the ALJ overlooked significant probative evidence relating to plaintiff's headaches and slurred speech. Dkt. # 23, at 2-3. Second, plaintiff argues "the evidence, when it is all fairly considered (and especially with regard to [plaintiff's] vision), overwhelms the ALJ's findings and indicates more limitations than the ALJ found." Id. at 3. Third, plaintiff argues the ALJ's failure to explicitly assign a weight to Dr. Abernathy's opinion is error. Id. at 4. Fourth, plaintiff argues the ALJ failed to conduct the "required analysis" of a January 2019 eye examination that indicates "the severity of [plaintiff's] eye conditions and support, and are consistent with, his complaints about the limitations that stem from his eye impairments." Id. at 5. Fifth, plaintiff argues the ALJ found "mild social limitations and

---

[2] This and other unpublished decisions are not precedential, but they are cited herein for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

fail[ed] to include, without proper explanation, any limitations on personal contact in the RFC." Id. at 5-6. Sixth, plaintiff states that "the ALJ failed to make the proper analysis regarding [plaintiff's] pain" and ignored "that the regulations [20 C.F.R. §§ 404.1529(c)(1), (3) and 416.929(c)(1), (3)] acknowledge that symptoms experienced by a claimant can demonstrate greater severity than may be shown by objective medical evidence alone." Id. at 6-7. Seventh, and finally, plaintiff argues that the ALJ "chose to believe some of [plaintiff's] complaints but found him not consistent regarding others, all without proper explanation." Id. at 7.

With the exception of plaintiff's third argument–that the ALJ failed to expressly assign a weight to a consulting physician's medical opinion–all of plaintiff's arguments flow from the premise that the ALJ's decision is not supported by substantial evidence. In those arguments, plaintiff either attacks the weight the ALJ assigned certain evidence or his failure to acknowledge certain evidence in his analysis. After reviewing the record and the objections, the Court finds that neither the challenge to the legal standards used by the ALJ, nor the objection to the ALJ's weighing of substantial evidence, constitute valid objections. Accordingly, the Court denies plaintiff's objections to the magistrate's report and recommendation and accepts that report and recommendation.

### A. Legal Standards

Plaintiff's argument that the ALJ did not adhere to appropriate legal standards by failing to expressly assign a weight to Dr. Abernathy's opinion is not supported by the law in this Circuit. There is no de facto error where the ALJ has "discussed [a medical] record but did not expressly weigh it." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012). Where the RFC is "generally consistent" with the medical opinion, plaintiff would need to show that "that a further

analysis or weighing of this opinion could advance [plaintiff's] claim of disability." Id. Plaintiff has not demonstrated how the findings, as stated in the report, are not adequately accommodated by the limitations in his RFC. Without allegations demonstrating how the failure to assign a weight to the opinion prejudiced plaintiff, the objection is not properly raised.[3]

### B. Substantial Evidence

Plaintiff's remaining arguments all flow from the premise that the ALJ failed to appropriately weigh or consider various pieces of evidence. First, plaintiff argues the ALJ overlooked plaintiff's headaches and slurred speech. Dkt. # 23, at 2-3. The ALJ, however, clearly reviewed the opinion, as he noted plaintiff complained of headaches. The ALJ is not required to discuss every piece of evidence in his decision. Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009). The ALJ's decision will generally be found to be adequate where "it discusses the 'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject." Id. (quoting Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007)). Therefore, omission of a detailed discussion of plaintiff's headaches or mention of the report of slurred speech is not error in and of itself. Plaintiff must demonstrate that the evidence that was not discussed is "significantly probative" or "uncontroverted." First, the Court does not see, and plaintiff does not state, how evidence of slurred speech is "significantly probative" of any plaintiff's alleged conditions. Similarly, the Court does not see what "slurred speech" would be evidence of, let alone unconverted

---

[3] Were plaintiff to have objected on the basis that the assigning of weight would have changed the ALJ's analysis of plaintiff's RFC by expressly weighing the opinion that discusses headaches and slurred speech, plaintiff still fails to demonstrate how further analysis of the medical opinion before the ALJ could have advanced plaintiff's claim of disability. The Court doubts that plaintiff could so demonstrate, considering that the report does not note any functional limitations arising from plaintiff's symptoms that have not already been reflected in the RFC.

evidence of. Third, and finally, the Court notes that the ALJ had numerous other medical reports before him and conducted a hearing in which he had the chance to observe plaintiff. Not a single report notes that plaintiff struggled with communication, and the ALJ did not state he found plaintiff to be slurring his speech in the hearing. In fact, he found that plaintiff was capable of participating in dialogue based on plaintiff's testimony and his application. Dkt. # 9, at 17.

Plaintiff also argues that the ALJ did not "discuss" plaintiff's headaches, even though he did mention them. However, again plaintiff does not indicate how the evidence of headaches is significantly probative, especially in light of the fact that plaintiff's mental evaluations do not indicate plaintiff's headaches interfere with his cognitive abilities. Finally, plaintiff does not explain why the ALJ's choice to not discuss or not include plaintiff's symptoms of headaches and slurred speech, respectively, prejudices plaintiff. Given the above, the Court finds the omission of discussion of headaches and the omission of slurred speech was not error.

Second, plaintiff argues "the evidence, when it is all fairly considered (and especially with regard to [plaintiff's] vision), overwhelms the ALJ's findings and indicates more limitations than the ALJ found." Dkt. # 23, at 3. In making his second argument, plaintiff states that "the record contains a later opinion from a vision specialist, as opposed to an OB/GYN, that contains probative findings the ALJ apparently did not credit." Id. at 4. However, the Court notes that the ALJ does discuss the later report, from Dr. Roberson, and his findings (high intraocular pressure and a cataract). Dkt. # 9, at 21-22. Upon review of Dr. Roberson's findings, the ALJ did not find any additional limitations were warranted (id. at 22), as the ALJ had already found that plaintiff needed to be subject to restrictions in his RFC based on his partial blindness. Plaintiff does not state how the report indicates more restrictions are necessary. Accordingly, the Court finds that the ALJ's

11

finding, that the visual restrictions in the RFC adequately accommodate plaintiff's severe visual impairment, is supported by substantial evidence.

Plaintiff's fourth objection–that the ALJ failed to make the "required analysis" of a January 2019 eye examination that indicates "the severity of [plaintiff's] eye conditions and support, and are consistent with, his complaints about the limitations that stem from his eye impairments"–also fails.[4] Dkt. # 23, at 5. The Court finds that the ALJ did, in fact, expressly address the findings in the report. Dkt. # 9, at 21. The report does not indicate plaintiff was experiencing pain and so the Court cannot find that any information in the report detracts from the ALJ's decision to give less weight to plaintiff's testimony regarding the severity of his pain. Further, plaintiff again fails to state what additional limitations would have been proper to include in the RFC based on the doctor's findings of high intra-ocular pressure and a cataract in plaintiff's left eye. The ALJ found that the RFC, as written, satisfactorily accounted for plaintiff's severe visual impairment and the Court finds that finding is supported by substantial evidence.

Fifth, plaintiff argues the ALJ found "mild social limitations and fail[ed] to include, without proper explanation, any limitations on personal contact in the RFC." Dkt. # 23, at 5-6. In fact, contrary to the agency psychologists' opinions that plaintiff had only mild mental impairment, the ALJ found plaintiff's his adjustment disorder with depressed mood had moderate impact on his ability to work and therefore restricted plaintiff's RFC to include only some complex tasks. Dkt. # 9, at 18. Plaintiff does not indicate how the ALJ's accounting for plaintiff's adjustment disorder

---

[4] Plaintiff does not indicate what the alleged "required analysis" is in a manner that the Court can construe as an objection to the legal standard. If plaintiff believed that the ALJ failed to develop the record with respect to plaintiff's functional limitations flowing from the diagnosis in the January 2019 eye exam, he did not so state in his objection and therefore the Court will not address it.

fails to address his limitations, and what additional restrictions would be necessary to create a more accurate RFC. Further, the ALJ explained that he did not find plaintiff was socially limited in a meaningful way by noting that plaintiff had never been let go for any social limitations, and did not present any indications of social strife in his personal life. Id. at 17-18.

Sixth, plaintiff argues that "the ALJ failed to make the proper analysis regarding [plaintiff's] pain" and ignored "that the regulations [20 C.F.R. §§ 404.1529(c)(1), (3) and 416.929(c)(1), (3)] acknowledge that symptoms experienced by a claimant can demonstrate greater severity than may be shown by objective medical evidence alone." Dkt. # 23, at 6-7. The Court notes that the ALJ expressly states he considered the 20 C.F.R. §§ 404.1529(c)(1), (3) and 416.929(c)(1), (3). Dkt. # 9, at 18. As a result, the Court does not find the ALJ "ignored" these regulations. Further, the ALJ expressly indicated that he was not convinced that plaintiff's alleged pain was consistent with the medical evidence and noted that allegations of eye pain are sometimes absent from plaintiff's medical records.

"When determining the credibility of pain testimony, the ALJ should consider such factors as 'the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the [plaintiff] and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.'" Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)). It is clear from the ALJ's decision he considered the plaintiff's visits to the doctor and plaintiff's representations to his doctors. In fact, the ALJ notes plaintiff denied having pain in at least two

medical appointments after his surgery. Dkt. # 9, at 19-20. Further, plaintiff did not allege pain as a reason keeping him from working as late as the hearing before the ALJ, where he stated he felt he could not work because of his visual limitations. Id. at 41-42. Plaintiff was not prescribed any medications for eye pain by any physician and, as a result, consideration of the absence of such information is not probative here. Because the Court finds that the ALJ supported his decision with substantial evidence available to him, and plaintiff's evidence does not substantially undercut such evidence, the Court finds the ALJ's determination must stand.

Seventh, and finally, plaintiff argues that the ALJ "chose to believe some of [plaintiff's] complaints but found him not consistent regarding others, all without proper explanation." Dkt. # 23, at 7. "Under Social Security Ruling 16-3P, an ALJ must evaluate a claimant's subjective complaints concerning his symptoms to determine whether those complaints are consistent with other evidence in the administrative record." Travas M.P., 2020 WL 5203592, at *6 (citing SSR 16-3P, 2016 WL 1119029 at *2). Where an ALJ finds plaintiff's complaints and evidence are consistent, "this tends to show the claimant's symptoms are more likely to reduce his capacity to work." Id. Conversely, where plaintiff's subjective complaints are not consistent with the evidence, the ALJ may determine plaintiff's symptoms are less likely to reduce his capacity to work. Id. The consistency analysis is "peculiarly the province of the finder of fact" and such determinations will not be upset if the findings are supported by substantial evidence. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010). The key issue is whether the ALJ "sets forth the specific evidence he relies on in evaluating the [plaintiff's] credibility," but he does not need to make a formalistic restitution of any particular factors. Keyes-Zachary, 695 F.3d at 1167. Here, the ALJ focused on medical reports of plaintiff stating he was not in pain, to indicate that plaintiff's reports of pain were not consistent. Further, the

ALJ reviewed plaintiff's ability to do other daily activities and found that, though slowed by his visual limitations, his ability to do them was indicative of his ability to complete tasks of some complexity in a non-hazardous environment. Further supporting the ALJ's decision is plaintiff's representation that he was capable of caring for his extremely disabled father while his application was pending, a fact which the ALJ expressly noted. Dkt. # 9, at 18. Plaintiff does not indicate, with specificity, what information was specifically overlooked that prejudiced plaintiff's disability determination. Plaintiff merely notes that evidence that plaintiff can accomplish activities of daily living (ADLs) does not preclude a finding of disability. Dkt. # 23, at 7. That is true, but it is also true that evidence of these activities, can be used to support a particular RFC. Accord Thompson, 987 F.2d at 1489 (finding consideration of plaintiff's ability to complete ADLs is a factor in assessing the credibility and consistency of plaintiff's allegations of pain).

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 22) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 12th day of March, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE